UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

THE HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY,

       Plaintiff,

v.

MENADA INC.,

       Defendant.

CASE NO. 1:17-cv-21465-UU
Judge Ursula Ungaro

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY ("HSB") by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Southern District of Florida Local Rule 56.1(a), hereby files this Motion for Summary Judgment and Incorporated Memorandum of Law and states:[1]

## I.    INTRODUCTION

This is a simple declaratory judgment action. The issue before the Court is whether an insured who suffered the breakdown of an HVAC chiller unit is entitled to the cost of repairing the equipment or replacing the equipment. When a policy provision states that the insurer's payment to the insured will be the lesser of repair or replace based on the insurer's valuation, and the undisputed facts demonstrate that the insurer has three different estimates for repair that are less than the cost to replace (one of which was supplied by the Menada itself), the answer to this

---

[1] HSB's Statement of Material Facts in Support of Motion for Summary Judgment is separately filed in accordance with S.D. Fla. L.R. 56.1. All deposition transcripts have been separately filed. All exhibits referenced herein by <u>letter</u> were filed as attachments to the Statement of Facts. All exhibits referenced herein by <u>number</u> are enclosed with this Motion.

question is quite obviously and emphatically the cost to repair. What's more, the insured has **never** provided any admissible evidence showing that the chiller could *not* be repaired. And yet, Menada continues to argue—without any support—that they are entitled to the cost of replacement nonetheless. It is the equivalent of demanding a new Lamborghini when one's Honda Civic can be returned to its pre-loss condition by a standard brake repair.

HSB issued an Equipment Breakdown Insurance Policy (the "Policy") to Menada. The Policy covered Menada's property, a hotel located at 5101 Collins Avenue in Miami Beach, which utilized two McQuay 160-ton chillers for providing air conditioning to the hotel and its rooms. On October 17, 2016, Menada discovered that one of its McQuay chillers (the "Chiller") was not functioning properly. Thereafter, Menada retained the services of Machin Mechanical Services & Control ("Machin") to conduct an inspection of the Chiller. Menada notified HSB of the breakdown on November 3, 2016. Upon receiving notice of the claim, HSB began its own investigation, which included two site visits and request for documentation in support of the claim.

HSB secured two independent evaluations of the Chiller in question, one of which was performed by the chiller's manufacturer. Despite the fact that both evaluations concluded that repair of the Chiller was possible, Menada insists—again, with no evidence whatsoever—that the Chiller must be replaced at a higher cost than the estimated repairs. Menada supports their demand for full replacement with their own expert's evaluation of the Chiller, who has provided costly estimates for repair and replacement,[2] but notably contains no statement that the Chiller

---

[2] Between the two evaluations secured by HSB and the one from Menada, that makes three independent evaluations for repair, all of which were less than the claimed cost of replacement.

*cannot* be repaired. HSB informed Menada on multiple occasions that the policy language explicitly and unequivocally provides that HSB's responsibility is limited to the lesser of repair or replacement based on HSB's valuation of the damaged property. Throughout the claims process it was made clear to Menada from all three independent evaluations that repair of the Chiller was possible, and the cost of repair was substantially less than a full replacement.

HSB twice offered to resolve the claim for the repair cost of the Chiller, but these offers were rejected by the Defendant, who claimed that the Chiller could not be repaired. HSB then— prior to suit—issued a check to the Defendant for the actual cash value for the machine ($77,744.00), considering the Chiller was nearing the end of its useful life and the application of the Policy's $10,000 deductible. Menada rejected the check both times and returned it to HSB.

## II.     MEMORANDUM OF LAW

HSB is entitled to summary judgment on the basis of the plain, unambiguous meaning and legal effect of the Policy, which provides that HSB is responsible for the lesser of repair or replacement of covered property based on their valuation. Menada's position that HSB must pay a higher cost for the property to be replaced is based on an interpretation of the Policy so at odds with the explicit Policy language as to call into question whether Menada made a claim in good faith in the first place. HSB acted properly and has secured two separate estimates for repair that would return the Chiller to full functionality.

### A.     Standard for Motion for Summary Judgment

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As to materiality, the substantive law will identify which facts are material, and factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 248. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

**B.     Principles of Insurance Contract Interpretation**

Construction of an insurance policy is a question of law to be determined by the court. *See Allstate Ins. Co. v. Swain*, 921 So. 2d 717, 719 (Fla. 3d DCA 2006). Insurance contracts are construed according to their plain meaning. *See Garcia v. Fed. Ins. Co*., 969 So. 2d 288, 291 (Fla. 2007); *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). Courts are not permitted to rewrite insurance contracts. *See Harrington v. Citizens Prop. Ins. Corp.*, 54 So. 3d 999, 1002 (Fla. 4th DCA 2011).

Only if the insurance provision in question is found to be ambiguous is it appropriate to apply other means of construction. *See Westinghouse Elec. Corp. v. Prudential Ins. Co. of Am.*, 547 So. 2d 721, 722 (Fla. 1st DCA 1989). Policy language is ambiguous only if it is susceptible to more than one reasonable interpretation. Importantly, a provision is not ambiguous simply because it is complex or requires analysis. *Garcia*, 969 So. 2d at 291. Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the policy construed in favor of the insured. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998).

Here, Menada has never raised ambiguity as a defense. Therefore, it cannot raise the issue of ambiguity now. *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) ("[T]he general rule is that, when a party fails to raise an affirmative defense in the pleadings, that party waives its right to raise the issue at trial."). The policy language is plain, and clearly states "our [HSB's] payment … **will be the smallest of**: (1)The cost to repair the damaged property; (2) The cost to replace the damaged property on the same site; or (3) The amount you actually spend that is necessary to repair or replace the damaged property." (emphasis added). It must be enforced according to its terms.

C.    **HSB Has The Right To Value Property and to Pay the Lesser of the Cost of Repair, Replacement, or the Actual Amount Spent.**

1.    **HSB has the authority to determine the value of "covered property".**

Under the Policy, HSB has the duty to determine the costs of remedying damaged "covered property". In the valuation section of the Policy, it is plainly stated that, "We [HSB] will determine the value of 'covered property'" *See* **Exhibit "A"** at 13. This provision clearly places the duty to evaluate repair or replacement costs upon HSB, as the Insurer. At no point does the Policy state that an Insured may determine the value of damaged property on their own accord, nor does the Policy instruct them to retain their own repair estimates to dispute the Insurer's estimates. Curt Coffman Dep. 154:21-156:9, Nov. 30, 2017.

Despite this, Menada has continued to make allegations that the subject Chiller cannot be repaired, even after producing their *own* estimate for repair of the Chiller, provided by Machin less than a month after their replacement estimate. Of course, that replacement estimate was for more than the cost of repair. However, the Machin estimate for replacement contains no factual

findings, and there is *zero* admissible evidence in the record indicating that the Chiller could not be repaired for less than the cost of replacing it.

HSB retains the right under the Policy as the Insurer to determine the appropriate cost for remedying a covered "accident" to "covered equipment" and to pay the insured for that amount. It is plainly clear that the lowest cost to return the Chiller to its pre-loss condition would be a repair pursuant to Daikin's estimate. Menada's unsubstantiated claims to the contrary are unsupported by any admissible evidence and are in direct conflict with the simple and clear language of the Policy. Lastly, it should not go without repeating that <u>it is an undisputed fact that the Chiller can be repaired</u>, as provided by Menada's own evaluation from Machin. Thus, HSB is only required to provide Menada with payment for reasonable repair costs based on its valuation of the damage supported by estimates. Menada is, of course, free to take that payment and use a more expensive mechanical service company to replace a covered chiller that three independent evaluations have determined can be repaired. If they choose that avenue, however, then nothing obligates HSB to pay additional monies and Menada must make up the difference in cost on their own.

> **2.      HSB is only responsible for the lesser of repair or replacement costs according to the Policy.**

The Policy unambiguously states that when "covered property" suffers a covered "accident", HSB will pay for the lesser amount between the cost of repairing the system or replacing the system. *See* **Exhibit "A"** at 13. HSB complied with the clear terms of the insurance contract at issue in this case when it produced two independent evaluations concerning repair of the Chiller. Each of the evaluations concluded by finding that the subject chiller can be repaired to full function and its pre-loss condition for significantly less than Machin's estimate

for replacement or repair. It is self-evident that Chillco's estimate for repair ($106,500.00), Daikin's estimate for repair ($79,762.00), and Machin's estimate for repair ($185,536.00) are all less than Menada's estimated cost of replacement of $292,480.02.[3]

> **D.    Menada's Specious Claims for Negligent Misrepresentation and Fraud Must Fail Because There is No Evidence Whatsoever to Support Them.**

> **1.    There Is No Evidence of Fraud in The Record.**

Menada's Counterclaim [D.E. 27] alleges counts for negligent misrepresentation (Count IV) and Fraud (Count V).[4] Both must be dismissed, as there is no evidence in the record to support them.

Under Florida law, in order to recover for fraud, a party must prove (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation. *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985). Likewise, in order to recover for negligent misrepresentation, a party must prove (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have

---

[3] HSB recently discovered that Menada has been leasing replacement chillers since **May** of 2017, from Menada's corporate representative's deposition. The actual documents, which should have been produced at the commencement of this case pursuant to Rule 26(a)(1) and again in response to HSB's request for production, were not produced until HSB scheduled a hearing before Judge O'Sullivan demanding them in the face of Menada's woefully inadequate discovery responses. The documents eventually produced show that the chillers cost approximately $85,000 each. *See* Meruelo Dep. 79:7-18. Considering Menada again withheld this information (in what appears to be a pattern of hiding the ball, and while continuing to assert entitlement to nearly $300,000), HSB will be moving separately to dismiss Menada's counterclaim for fraud on the court.

[4] Both are allegedly pleaded "in the alternative," but it is not clear what they are pleaded in the alternative to, other than perhaps to each other.

known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Howard v. Murray*, 184 So. 3d 1155, 1167 n.23 (Fla. 1st DCA 2015). Although the two causes of action differ slightly—particularly in terms of the requirement for justifiable reliance—they are similar in that they both undoubtedly require proving both misrepresentation and detrimental reliance. *See Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. 1st DCA 2011).

There is no evidence whatsoever in the record demonstrating that a misrepresentation was made by HSB. Menada's corporate representative, Richard Meruelo, was produced at a deposition pursuant to Fed. R. Civ. P. 30(b)(6) to testify regarding, *inter alia*, "Menada's claim at issue in this litigation" and "All communications between Menada and HSB regarding the chillers." When asked whether HSB had made any untrue statements to Menada regarding the handling of the claim, Mr. Meruelo responded "***I have no idea what statements have been made or not made*** other than they have not provided us a reimbursement and we are in litigation now." Richard Meruelo Dep. 105:19-21, Dec. 18, 2017. When further asked "Are you aware of any untrue statements that have been made by HSB to Menada?" Mr. Meruelo responded simply, "I do not know." *Id.* at 106:17-19. Because Menada's corporate representative was unable to even recall, much less *prove*, any untrue statements made by HSB, there is no issue of material fact as to either fraud or negligent misrepresentation, and summary judgment must be granted in HSB's favor on those issues.

Furthermore, negligent misrepresentation and fraud share the common element of requiring *reliance* on a misrepresentation, differing only as to whether such reliance must be justifiable. *Specialty Marine*, 66 So. 3d at 310. When asked whether Menada had done anything

to rely on any statement from HSB, Mr. Meruelo responded "I don't know." Meruelo Dep. 111:10-12. Once again, because Menada's corporate representative was unable to even recall, much less *prove*, any detrimental reliance (whether justifiable or not) on *any* statement made by HSB, much less a *false* statement by HSB, there is no issue of material fact as to either fraud or negligent misrepresentation, and summary judgment is appropriate. Once again, HSB is left to wonder whether these claims were made in good faith, based on Menada's utter inability to prove them.

### 2. Menada's "Sham" Discovery Responses Do Not Create A Genuine Issue of Material Fact.

HSB nonetheless anticipates that Menada will rely on interrogatory responses it provided after the discovery cutoff, and only pursuant to court order, to establish that a genuine issue of material fact exists as to whether HSB committed fraud or misrepresentation. A copy of the Amended Interrogatories are attached hereto as **Exhibit 1.** Not only are these interrogatory responses belied by Menada's own corporate representative's testimony (as recounted above), they do not amount to fraud.

### (a) Menada's Discovery Responses Should Not Be Considered.

The Eleventh Circuit has held that parties cannot "undo" their prior deposition testimony by filing sham affidavits to correct such testimony, without explanation. *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Practically, there is no difference between testimony by affidavit and testimony by interrogatory, as both are made

under oath. Under the circumstances, it is clear that the interrogatory answers were intended to create issues of material fact where they did not otherwise exist.[5]

It bears repeating that in his deposition, Mr. Meruelo testified that Menada did not know of any misrepresentations HSB may have made. Meruelo Dep. 105:19-21, 106:17-19. Yet, in the amended interrogatory responses, Menada's concocted recount of the alleged misrepresentations is over **two pages** long. Mr. Meruelo also testified that Menada did not know whether Menada had done anything to rely on any statement from HSB. Meruelo Dep. 111:10-12. In its interrogatory responses, Menada's explanation is now over a page long. Menada has provided no reason for this inconsistency and resurrection of an otherwise dead issue, and as a result it should not be considered. *See Pashoian v. GTE Directories*, 208 F. Supp. 2d 1293, 1298-99 (M.D. Fla. 2002) (holding that such testimony may be considered if "a reasonable explanation is given for the inconsistency").

These facts are virtually identical to those in *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 527 (2d Cir. 1969), a case upon which the Eleventh Circuit relied upon in *Van T. Junkins*. *See Van T. Junkins*, 736 F.2d at 658. There, a plaintiff filed an affidavit that contradicted his deposition testimony. The plaintiff in that case was deposed for four days and was repeatedly asked to specify the basis of the fraud he alleged. *Perma*, 410 F. 2d at 578. At one point, he stated: "There is no way of me knowing exactly what their intention was at the time they said it, except that they promised certain things when everything else points to the fact that they did not intend to do what they said they were going to do." *Id.* at 577. In a subsequently-filed affidavit, that same plaintiff then attributed certain statements to representatives of the

---

[5] The Court should also compare Menada's *original* responses to the interrogatories, attached hereto as **Exhibit 2**, with the amended responses. The difference is egregious.

defendant, which he had not mentioned in his deposition. *Id.* The Second Circuit found that the district court could properly conclude that the statements made in the affidavit were less reliable than those in the deposition, the court found that there was no triable issue of fraud. *Id.* at 578.

Here, in testimony far less substantive than that in *Perma,* Mr.. Meruelo testified that Menada did not know of any misrepresentations HSB may have made, and did not know of any reliance upon such representations. Meruelo Dep. 105:19-21, 106:17-19, 111:10-12. Menada's testimony to the contrary in its interrogatory responses is flatly inconsistent with the prior deposition testimony, and should be rejected.

Lastly, it is worth noting that due to Menada's continued failure to disclose pertinent facts in both responses to Rule 26 disclosures and written discovery, HSB was unable to depose Menada's corporate representative about the alleged misstatements of material fact or the supposed reliance alleged in their Amended Answers to Interrogatories. As a result, such misstatements should not be afforded any weight by the Court and should be stricken.

> **(b)** **Even If Menada's Discovery Responses Are Considered, They Do Not Create a Genuine Issue of Material Fact.**

Menada's response to interrogatory number 10 alleges that HSB made two material misrepresentations. First, HSB allegedly misrepresented to Menada that "the damaged first chiller could be repaired without providing any professional opinions with respect to the cost of repair v. replace of the damaged first chiller unit." As noted, above, the first element of both fraud and misrepresentation is "a false statement of material fact." *Johnson*, 480 So. 2d at 627; *Howard*, 184 So. 3d at 1167 n.23. However, there is zero admissible evidence in the record that the actual statement—that the chiller could not be repaired—was false. As discussed *supra*, there are three estimates in this case (one provided by Menada itself) that each provide a means of

repairing the chiller. No witness other than Richard Meruelo has testified that the chiller could not have been repaired, and Mr. Meruelo's testimony as to what he was told by someone else[6] is the definition of hearsay. Because Menada cannot prove that the statement was false, the amended interrogatory response does not create a <u>genuine</u> issue of material fact.

The second misrepresentation that HSB allegedly made was by failing to inform Menada that Chillco was not a licensed Florida contractor. This is not a material fact, as nothing in the Policy requires that HSB use a Florida licensed contractor to make this determination, nor is it relevant to the ultimate issue in this case as to whether the chiller could have been repaired or whether it needed to be replaced. The Chillco estimate plainly stated that "The cost estimates are based on a local company performing the scope of work." See **Exhibit E.** There is no evidence in the record that this was a misstatement of fact. In fact, the record shows that the statement was true: the Daikin estimate for repair *also* stated that the chiller could be repaired (and for less than Chillco's estimate), and Daikin *is* a Florida-licensed contractor. Menada's allegations as to collusion between and among HSB, Chillco, and Daikin are entirely unsupported by evidence— whether deposition testimony, discovery responses, or documentations. Speculation does not create genuine issues of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.

---

[6] In his deposition, Mr. Meruelo testified that Luis Rosa, a consulting engineer, told him that the chiller needed to be repaired. To this day, Mr. Rosa has **<u>never</u>** been disclosed in writing as having knowledge regarding this claim, even after Menada was given the opportunity to provide better answers to interrogatories. Furthermore, HSB was unable to depose Mr. Rosa prior to the discovery deadline, as by the time his involvement was revealed, he was on vacation until after the cut-off. HSB's prior motion for an extension to conduct a deposition of Mr. Rosa was denied. [D.E. 64] Thus, Mr. Rosa should not be permitted to testify, and his opinion as expressed through Mr. Meruelo is hearsay not otherwise able to be reduced to an admissible form.

2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

Because neither of the alleged statements by HSB are misrepresentations of material fact, Menada has failed to create a genuine issue of material fact as to whether HSB committed either fraud or negligent misrepresentation. As a result, for the reasons discussed, above, summary judgment should be entered on those two claims.

### E.   Menada's Claim for Unjust Enrichment Must Fail Because An Express Contract Governs the Relationship Between The Parties.

In the alternative to its claim for breach of contract (which is, itself, essentially a mirror image of HSB's own claim for declaratory judgment), Menada has counterclaimed for unjust enrichment (Count III). Such a claim must fail.

The law in Florida is abundantly clear that a plaintiff cannot pursue an equitable theory, such as unjust enrichment, to prove entitlement to relief if an express contract exists. *See, e.g.*, *Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007). Although this Court previously allowed Menada's claim to survive a motion to dismiss because such relief was pled in the alternative to its claim for breach of contract [D.E. 24], the same standard does not apply on summary judgment. *Validsa, Inc. v. PDVSA Servs. Inc.*, 632 F. Supp. 2d 1219, 1243 n.24 (S.D. Fla. 2009), *aff'd in part*, 424 F. App'x 862 (11th Cir. 2011).[7] Once the existence of an express contract between the parties is proven, a claim for unjust enrichment must be dismissed as a matter of law. *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008).

---

[7] Although the Eleventh Circuit reversed the District Court in *Validsa* regarding certain issues of material fact, it upheld the District Court's summary judgment on the unjust enrichment claim based on the existence of an express contract. *Validsa*, 424 F. App'x at 873.

During discovery, HSB requested that Menada admit or deny that "[T]he Policy, which was attached to [HSB's] Complaint for Declaratory Judgment as *Exhibit B*, is a true and correct copy of the policy provided by HSB to Menada." Menada admitted this. *See* **Exhibit "B"**. A matter admitted in response to a request for admissions is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Fed. R. Civ. P. 36(b). Because the existence of an express contract between the parties has been conclusively established, HSB is entitled to summary judgment on the unjust enrichment claim.

F.  **To The Extent the Second Chiller Is At Issue in This Lawsuit, It is Not a Covered Loss.**

Menada allegedly suffered the loss of a second chiller on or about June 14, 2017, and reported it to HSB on or about July 12, 2017 (the "Second Chiller"). It has never been entirely clear to HSB whether Menada is making a claim for the loss of the Second Chiller or not.[8] However, assuming *arguendo* that the Second Chiller is in question, it is not a covered loss, and the policy provides no coverage for it. The Policy explicitly excludes "depletion, deterioration, rust, corrosion, erosion, settling or wear and tear" from the definition of "Accident" (which is the triggering event for coverage). Menada's Counterclaim *specifically* alleges that the Second Chiller was damaged "by…overuse, strain, and wear and tear." [D.E. 27, at ¶¶ 48, 79]. Because it is uncontroverted that overuse, strain, and wear and tear are not "accidents" within the meaning of the Policy, there is no coverage for the alleged loss of the Second Chiller, and summary judgment in HSB's favor is required.

---

[8] The Second Chiller is referenced in Menada's Counterclaim, and all of the counts alleged in the Counterclaim incorporate the paragraphs that reference it. However, HSB had not yet denied coverage for the Second Chiller when the Counterclaim was filed. It has since done so.

III.    **CONCLUSION**

Having fully heard the arguments of both parties, this Court should find that no genuine material issues of facts remain, and hold that THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY is only responsible for repair costs of Menada's Chiller, pursuant to the Policy. Menada's counterclaims should be dismissed because there are no facts in the record supporting any of their claims.

**WHEREFORE**, Plaintiff THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY requests this Court to enter judgment in its favor, and declare that:

1.      HSB has the authority to declare the subject chiller may be repaired;

2.      Because Menada refused to allow HSB to repair the chiller, HSB is only responsible for the actual cash value of the chiller of $79,273.04; and

3.      There is no coverage for the Second Chiller.

The Court should further enter summary judgment on Menada's Counterclaim, and dismiss the counterclaim for breach of contract on the grounds that HSB did not breach the policy; dismiss the claim for unjust enrichment on the grounds that there is an express contract between the parties; and dismiss the claims for negligent misrepresentation and fraud on the grounds that there is no evidence supporting them. Finally, the Court should grant any further relief it deems just and appropriate under the circumstances.

### CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2018, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

/s/ *Rory Eric Jurman*
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Jesse D. Drawas
Fla. Bar No. 68654
Email: jdrawas@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:    (954) 377-8100
Facsimile:    (954) 377-8101

CASE NO. 1:17-cv-21465-UU

**SERVICE LIST**

CASE NO. 1:17-cv-21465-UU

Raul Morales, Esq.
Martinez Morales
2600 S. Douglas Road, Suite 305
Coral Gables, FL 33134
E-Mail: rmorales@mmlawfl.com;
ahonaker@mmlawfl.com
Telephone: (305) 501-5011
Facsimile: (786) 272-7997
Attorney for MENADA INC./BEACH
PARADISE HOLDINGS, LLC

   4826-7661-9864, v.  4