**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:17-cv-21465

THE HARTFORD STEAM
BOILER INSPECTION AND
INSURANCE COMPANY,

      Plaintiff,

v.

MENADA, INC.,

      Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment (the "Motion"). D.E. 58.

The Court has reviewed the Motion, the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons set out below, the Motion is GRANTED in part and DENIED in part.

### I.   Factual Background

The material facts, viewed in the light most favorable to Defendant, are as follows:

    A.  The Insurance Policy

Plaintiff, Hartford Steam Boiler Inspection and Insurance Company ("Hartford") and Defendant, Menada, Inc., ("Menada") entered into an insurance policy providing for equipment breakdown coverage at certain locations, including 5101 Collins Avenue, Miami Beach, Florida where Menada owns a hybrid residential-hotel. D.E. 99 at 3. The policy had a coverage period

from May 15, 2016, to May 15, 2017.[1] D.E. 75-1 at 4.[2] On October 17, 2016, Menada suffered a covered "Accident"[3] when one of two of its 260-ton McQuay Brand chillers ceased functioning. D.E. 99 at 3. The insurance policy contains the following relevant provision covering valuation and loss in the event of an Accident:

"**10. Valuation**

We will determine the value of "covered property" as follows:

a. Except as specified otherwise, our payment for damaged "covered property" will be the smallest of:

> (1) The cost to repair the damaged property;
>
> (2) The cost to replace the damaged property on the same site; or
>
> (3) The amount you actually spend that is necessary to repair or replace the damaged property.

b. The amount of our payment will be based on the most cost effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

c. Except as described in d. below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity." D.E. 75-1 at 25.

### B.  The Claim

On October 17, 2016, Menada discovered that one of its two chillers was not functioning. D.E. 99 at 3. The next day, Menada retained Machin Mechanical Services and Controls ("Machin") to inspect the chiller. D.E. 81 at 17. As part of its inspection, Machin had to

---

[1] Menada disputes the term of the policy without any evidentiary support, stating that on May 9, 2017, Hartford extended the policy with no change in terms until June 30, 2017. D.E. 81 at 14. As neither party disputes that the first chiller was damaged during the coverage period, the Court does not address this contention here. *See infra* note 15.

[2] The policy also provided for a $10,000 deductible. D.E. 75-1 at 7.

[3] Under the policy, "'Accident' means a fortuitous event that causes direct physical damage to 'covered equipment.' The event must be one of the following: (1) Mechanical breakdown…" D.E. 75-1 at 29. Despite their many disputes, the parties always have agreed that the breakdown of the chiller was a covered "Accident." *See* D.E. 99 at 3.

dismantle the chiller and charged Menada $9,511.04 for the dismantling and service. D.E. 75-3 at 1. On or about November 8, 2016, Menada notified Hartford of its claim. D.E. 74-2 at 6. Simultaneously, Menada retained an insurance claim professional, Vincent LoBracco ("LoBracco") of Coast to Coast Claims Consultants, Inc., to assist with Menada's claim. D.E. 81-3. On December 1, 2016, Machin provided Menada with a replacement estimate of $292,480.02. D.E. 75-11.[4] On December 12, 2016, Menada sent Hartford a preliminary statement of loss, including the Machin replacement estimate and the invoice for the costs related to Machin's inspection. D.E. 75-3.

Upon receipt of the claim, Hartford began an investigation, and retained ChillCo, Inc. ("ChillCo"). D.E. 75-4. Chillco inspected the chiller and provided a repair estimate of $106,500.00, dated December 13, 2016. D.E. 75-5; D.E. 27 at 7. Menada objected to this estimate in part because ChillCo was not a Florida-licensed HVAC contractor. D.E. 68-1 at 133.

On December 19, 2016, Hartford sent Menada a check for $77,744.00, which it described as the actual cash value of the chiller.[5] D.E. 75 at 4 ¶ 23; D.E. 75-12; D.E. 81 at 14 ¶ 25. Menada refused the check. D.E. 68-1 at 85:22-25, 89:15-24. Hartford then retained Daikin Applied Americas, Inc., ("Daikin"), the company that manufactured the chiller, to inspect the chiller and provide another opinion. D.E. 81 at 20. Daikin provided a repair estimate of $79,762.00, dated January 19, 2017 (the "Daikin Estimate"). D.E. 75-6. By combining the Daikin Estimate ($79,762.00) with the costs charged by Machin for its initial inspection, Hartford concluded that

---

[4] Menada also provided Hartford with a "refurbishment" estimate from Machin in a settlement communication and during discovery, which could be construed as an admission by Menada that the chiller could be repaired. D.E. 69-2; D.E. 74-11; D.E. 75-10. Although the Court would deny Menada's motion in limine seeking to exclude the repair estimate, D.E. 93, under Rule 408 because Hartford does not seek to rely on it for the validity or the amount of the claim; only for the fact that Menada was advised by Machin that the chiller could be repaired, *see* Fed. R. Evid. 408, the Court did not consider Machin's refurbishment estimate in resolving the summary judgment. Therefore, the Motion in Limine to Exclude Settlement Communications, D.E. 93, is moot.

[5] Section 10(e) permits valuation of covered property on an "Actual Cash Value Basis" under some circumstances. D.E. 75-1 at 26. However, Hartford does not rely on "actual cash value" in its claim for declaratory relief.

the total cost of repairs was $89,273.04, subject to the $10,000 deductible, leaving a payment of $79,273.04 due to Menada under the insurance policy. D.E. 75-7. Hartford informed Menada of this valuation on January 20, 2017. *Id.* On January 26, 2017, Menada rejected this valuation and, in order to perfect its right to sue under Florida Statute § 624.155, filed a Civil Remedy Notice with the Florida Department of Financial Services, alleging that Hartford had violated various provisions of the Florida Insurance Code. D.E. 75-8. Hartford timely responded to the Civil Remedy Notice on March 23, 2017. D.E. 75-13.

### C.  Replacement with Trane

On May 26, 2017, Menada entered into a contract with Trane U.S. Inc. ("Trane"), for the lease/purchase of two Trane chillers to replace both chillers for a total cost of $165,700.00. D.E. 68-1 at 79; D.E. 81-A. To finance this, Menada entered into a lease agreement with a purchase option with Wells Fargo Bank, N.A.. D.E. 81 ¶ 44; D.E. 68-1 at 79. These chillers were set up and installed in late-November 2017. 68-1 at 83.

## II.  **Procedural Background**

On April 19, 2017, Hartford filed its complaint for declaratory relief seeking a judgment that it is only responsible for the smallest cost to repair the chiller under the insurance policy. D.E. 1. Menada responded with an answer and counterclaims on August 9, 2017. D.E. 27. In its answer and counterclaims, Menada asserted that the chiller could not be repaired, and that Hartford should have paid to replace the damaged chiller, D.E. 27; as a result, Menada alleged it was entitled to recover damages, including consequential damages for overuse of and wear and tear to the second chiller. D.E. 27.[6] The counterclaims consisted of five counts: (1) breach of

---

[6] Menada appears to take shifting and inconsistent positions as to the payment it is due under the policy. For example, in its answer, it cites the Machin replacement estimate, and in its response to Hartford's Motion for Summary Judgment, it cites the Trane proposal. *See* D.E. 27; D.E. 81. In any event, as discussed below, Menada would only be entitled to the lowest cost to repair or replace the chiller under the policy.

insurance contract; (2) breach of implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) negligent misrepresentation; and (5) fraud. D.E. 27.[7]

On August 28, 2017, the Court issued its Scheduling Order for Pretrial Conference and Trial, providing a January 5, 2018 deadline to complete discovery and a January 26, 2018 deadline for motions. D.E. 31. Before the deadline, Hartford filed its Motion for Summary Judgment (the "Motion"). D.E. 76.

In its summary judgment reply, Hartford makes numerous Rule 26 arguments for the exclusion of evidence due to late disclosure, and requests dismissal with prejudice in response to Menada's motion to voluntarily dismiss its counterclaims for fraud, negligent misrepresentation, and unjust enrichment. D.E. 88. All of these arguments have been addressed by the Court's Orders on Motions in Limine and Hartford's Motion to Strike Menada's Answer and to Dismiss Menada's Counterclaim for Fraud on the Court. D.E. 119-121.

## III.   LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

---

[7] Count Two was dismissed without prejudice by the Court on October 19, 2017. D.E. 40. Counts Three through Five were voluntarily dismissed with prejudice on March 30, 2018, pursuant to Menada's motion, D.E. 118; D.E. 98, leaving the breach of contract counterclaim as the sole remaining claim.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Elec. Techs., Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must

resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

**IV.**   **Analysis**

A.  Hartford's Grounds for Summary Judgment

Hartford moves for summary judgment on grounds that there is no genuine dispute of material fact that it is responsible for the lowest cost to repair under the insurance policy and therefore as a matter of law, Hartford is only responsible for payment of $89,273.04, less the deductible, or $79,273.04. D.E. 76 at 15. In support, Hartford argues that: (1) under the insurance policy Hartford has sole authority to determine the value of "covered property" and the lowest cost for any payment for damaged "covered property;" (2) there is no dispute that the chiller can be repaired and Hartford has the authority to declare it can be repaired under the insurance policy; and (3) Hartford's January 19, 2017 valuation is the "lowest cost" under the insurance policy. D.E. 76.

B.  Right to Determine Value of Covered Property

Hartford argues that there is no genuine dispute of material fact that under the insurance policy, it has the exclusive right to determine the value of covered property and the amount of any payment for damage to covered property. D.E. 76 at 5. The policy states, in relevant part:

"**10. Valuation**

We will determine the value of "covered property" as follows:

a. Except as specified otherwise, our payment for damaged "covered property" will be the smallest of:

(1) The cost to repair the damaged property;

(2) The cost to replace the damaged property on the same site; or

(3) The amount you actually spend that is necessary to repair or replace the damaged property.

b. The amount of our payment will be based on the most cost effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

c. Except as described in d. below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity." D.E. 75-1 at 25 (emphasis added).

Page 1 of the insurance policy clarifies that "the words 'we,' 'us' and 'our' refer to the Company providing this Insurance." *Id.* at 1 (emphasis added). Hartford contends that "at no point does the Policy state that an Insured may determine the value of damaged property on their own accord…." rather, Hartford "retains the right under the Policy as the Insurer to determine the appropriate cost for remedying a covered 'accident' to 'covered equipment' and to pay the insured for that amount." D.E. 76 at 6. Hartford continues that as it has the sole right to determine payment, Menada's estimates are irrelevant, and Hartford is only obligated to pay the amount that it determines to be owed. *Id.* Menada does not directly address this contention, but tacitly disputes that Hartford has a unilateral right to determine the value of the covered property by arguing that the amount it *actually* spent to replace the chillers with Trane is the lowest cost under the policy. D.E. 81 at 5-6.

The Court will apply Florida law to interpret the insurance policy as stipulated by the parties. D.E. 99 at 4. Under Florida law insurance contracts are to be interpreted according to their plain language and the intent of the parties. *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007).

Here, there is no ambiguity in the language of the insurance policy to the extent it states in Section 10 that Hartford has the right to determine the value of covered property and that the value will be the smallest of: the cost to repair or replace, or the amount actually spent by the insured that is necessary to repair or replace the covered property.

Section 10(b) goes on to say, however, that the amount of payment for damage to covered property will be based on the most cost-effective means to replace the function, capacity and remaining useful life of the damaged property. D.E. 75-1 at 25. Based on this language, the Court does not interpret the policy as providing Hartford with unfettered discretion to arrive at the valuation. Instead, the valuation must take into consideration the function, capacity and remaining useful life of the damaged property and that would seem to necessitate consideration of estimates and opinions produced by the insured. D.E. 75-1 at 25. Otherwise, there would be no reason to require an insured making a claim to submit a proof of loss with supporting information. *See id.* at 26.

This issue is of little moment, however, because there is no evidence in the record to suggest that Hartford failed to consider the information supplied by Menada. In fact, to the contrary, the record is clear that Hartford responded to the information Menada supplied by, among other efforts: promptly retaining a third-party (ChillCo) to inspect the chiller, D.E. 74-2 at 130, retaining Daikin to provide a second opinion after Menada's objection to Chillco's estimate, D.E. 81 at 12, considering the Machin initial inspection charges as a legitimate part of Menada's claim, D.E. 75-7 at 1, and explicitly discussing Menada's replacement estimates in its correspondence with LoBracco, D.E. 74-2 at 122-124; D.E. 75-7.

### C. Can the Chiller be Repaired?

Relying on different estimates, both parties have vociferously disputed throughout this litigation whether the chiller can be repaired or must be replaced. *See* D.E. 1; D.E. 27. Hartford argues that "it is an undisputed fact that the chiller can be repaired….," D.E. 76 at 6. Although not entirely clear, the Court interprets this as an argument that there is no genuine dispute of

material fact that the chiller is repairable, and that Hartford has the right to proclaim it repairable under the insurance policy. *See id.*

Menada argues that since the chiller cannot be repaired, replacement is the only viable option, but the only admissible evidence Menada presents in support consists of the Trane proposal, Machin's replacement estimate, and Meruelo's testimony. D.E. 68-1; D.E. 81-A.[8] Neither the Trane proposal nor the Machin replacement estimate states that the chiller cannot be repaired. *See* D.E. 75-11; 81-A. Therefore, they do not demonstrate the existence of a *genuine* issue of material fact as to the reparability of the chiller; repair and replacement are not binary – the chiller may be capable of being both repaired and replaced, albeit for different costs. As for Meruelo, his testimony on the subject amounts to: "I do not believe that those repair estimates were accurate in their final cost with respect to repairing the units to the same service capacity as they were prior to the breakdown." D.E. 68-1 at 117-118:23-1. His vague and speculative testimony does not create a *genuine* issue of material fact, particularly in the face of two independent repair estimates, and the lack of other admissible evidence that repairs would be insufficient to return the chiller to serviceable condition.

Standing in opposition, the record contains the two repair estimates from companies retained by Hartford (Daikin and ChillCo). D.E. 75-6; D.E. 75-5. Menada has provided no admissible evidence that the inspections and repair estimates from ChillCo and Daikin fraudulently or mistakenly state that the chiller is repairable. Instead, Menada attempts to undermine them by noting that the Daikin and ChillCo estimates contain different scopes of work and do not include

---

[8] In its response to Hartford's Motion for Summary Judgment, Menada relies on testimony from Meruelo and his discussions with Luis Rosa, Menada's consultant engineer, as well as Kenneth Steven Ramirez, CEO of Machin, to support the contention that the chiller could not be repaired. *See* D.E. 81. However, the Court excluded any evidence from or related to Ramirez and excluded Rosa as a witness on April 3, 2018, pursuant to Hartford's Motion in Limine as to Testimony from Luis Rosa, Kenneth Steven Ramirez, and Machin. D.E. 121. Additionally, Meruelo's testimony relying on what Rosa told him as to reparability would be hearsay, Fed. R. Evid. 801(c), and is therefore not properly considered in resolving the motion for summary judgment.

"eddy testing," among other procedures, but as Hartford's corporate representative explained, these discrepancies are minor and the failure to include "eddy testing" and other services was not necessary to put the unit back into operation and service. D.E. 74-1 at 90:15-18, 94:17-25; 95:1-3.[9] "<u>Nobody</u> identified that the machine needed to be replaced, that it was a total loss, between these … vendors." D.E. 74-1 at 156 (emphasis added).[10]

Lastly, the Court notes that the insurance policy does not define "repair," does not explain that a repair must satisfy specific requirements, and clearly provides Hartford with the right to produce its own repair estimates and to arrive at "the most cost-effective means [of] replac[ing] the function, capacity and remaining useful life of the damaged property." D.E. 75-1 at 25.[11] "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 247–48 (1986). And, on this record, there is no *genuine* dispute that the chiller can be repaired.

### D.  Lowest Cost to Repair or Replace

Hartford next argues that there is no genuine dispute of material fact that its estimate for repair of $89,273.04, D.E. 75-7, is the smallest cost under the insurance policy and that after application of the deductible, it owes Menada $79,273.04. D.E. 76 at 6-7. Remarkably, Menada responds that compared to Hartford's estimate of $89,273.04, the amount it actually spent to replace each chiller with Trane, $82,850.00, is the lowest cost. D.E. 81 at 6-11; D.E. 68-1 at 79;

---

[9] For example, in an email to LoBracco, Hartford also explains that the Daikin estimate includes other ancillary costs such as cleaning and painting. D.E. 74-2 at 126. "This is routine maintenance and not a repair required by the breakdown." *Id.*

[10] Menada also complained that Chillco's estimate was based on a local company performing some of the work, but it appears Chillco inspected the chiller itself, and in any event, Hartford also provided an estimate from Daikin, a local Florida-licensed HVAC contractor. *See* D.E. 74-2 at 122, 125, 152.

[11] As discussed, the insurance policy does not provide Hartford with an unqualified right to determine payment for damage to covered property, but it does permit Hartford to obtain repair estimates and use "cost-effective" means of repair and replacement. D.E. 75-1 at 25-26.

D.E. 81-A. As explained below, if Menada is correct, the net difference in amount owed Menada on account of replacement cost would be $3,088.00 more than the amount that Hartford says is due for repair.[12]

As discussed above, the record is clear and undisputed that Hartford's estimate is calculated from the Daikin Estimate ($79,762.00) plus the costs charged by Machin for disassembly in its initial inspection ($9,511.04), and is subject to the $10,000 deductible, leaving Menada with a payment of $79,273.04 under the insurance policy. D.E. 75-7. In contrast, the Trane replacement cost put forth by Menada ($82,850.00) is calculated solely from the replacement agreement with Trane. D.E. 68-1 at 79; D.E. 81-A. But the parties agree that the initial inspection charges are payable:

> **"i. Expediting Expenses**
>
> With respect to your damaged "covered property," we will pay the reasonable extra cost to:
>
> (1) Make temporary repairs; and
>
> (2) Expedite permanent repairs or permanent replacement." D.E. 75-1 at 15.

The purpose of Machin's initial inspection was to determine the problem with the chiller and provide a repair or replacement estimate, D.E. 68-1 at 42, which "expedites permanent repairs or permanent replacement" under the policy.[13] Thus, the $9,511.04 charged by Machin in its initial inspection is part of the "total cost" to repair or replace under the insurance policy. Therefore, the

---

[12] Hartford asserts that the Trane proposal should not be considered because it was neither timely disclosed nor submitted to Hartford as part of the claims handling process, D.E. 88 at 4; the Court has already addressed excluding Trane in its previous orders. *See* D.E. 120; D.E. 122. However, even without considering the Trane proposal, Hartford's estimate is still the smallest cost under the policy as the only other estimates are Machin's replacement estimate of $292,480.02, D.E. 75-11, and ChillCo's estimate of $106,500.00, D.E. 75-5 (both without initial inspection costs), far in excess of the $89,273.04 proposed by Hartford.

[13] Hartford included the initial inspection costs as part of the "total repair cost" in its January 20, 2017 estimate, D.E. 75-7, and Menada agrees that these charges are payable. D.E. 81 at 9 ("Menada's incurred costs [from Machin's initial inspection] … are payable under the Policy….").

Court will include the $9,511.04 in its determination of the total cost to repair or replace the chiller.[14]

As to the deductible, the policy clearly explains its function and application:

"**Equipment Breakdown Coverage Part Declarations No. 1**

**Deductibles**

**Direct**..................................................................... **$10,000.00**
      Except A/C and Refrigeration Systems.................. $25.00 per HP, Minimum of $10,000.00
      Except Perishable Goods..................................... 10% of loss, Minimum of $10,000.00
Indirect ............................................................... 24 Hours." D.E. 75-1 at 7 (emphasis added).

"**DEDUCTIBLES**
**2. Direct and Indirect Coverages**
      b. Unless more specifically indicated in the Declarations:

            (2) Direct Coverages Deductibles apply to … loss, damage or expense covered by this Equipment Breakdown Coverage.

**3. Application for Deductibles**
      **a. Dollar Deductibles**
      We will not pay for loss, damage or expense resulting from any 'one equipment Breakdown' until the amount of loss, damage or expense exceeds the applicable deductible or deductibles shown in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible or deductibles, subject to the applicable limits shown in the Declarations." D.E. 75-1 at 22.

A plain reading of the insurance policy demonstrates that the $10,000 direct deductible is applicable before any payment. *Id.* Thus, comparing the total cost Menada actually incurred in replacing the chillers with Trane, $82,850.00, D.E. 81-A, plus the $9,511.04 incurred in having Machin inspect the chillers, $92,361.04, with the $89,273.04 proposed by Hartford (which already includes the $9,511.04 in Machin inspection charges), D.E. 75-7, there is no genuine dispute that Hartford's estimate for repair is the smallest cost under the insurance policy.

---

[14] Even if the $9,511.04 were not part of the total cost of repair or replacement, such amount would need to be subtracted from the Hartford estimate of $89,273.04, resulting in an estimate of $79,762.00, which is still lower than the Trane cost.

Applying the $10,000 deductible, Hartford must pay Menada $79,273.04 for the first chiller. Accordingly, Hartford's motion for summary judgment on this ground is granted.

### E.   Second Chiller as Covered Property

Hartford also moves for summary judgment as to whether the damage to the second chiller is covered under the insurance policy, stating, "it has never been entirely clear to [Hartford] whether Menada is making a claim for the loss of the second Chiller or not. However, assuming *arguendo* that the Second Chiller is in question, it is not a covered loss [under the policy]." D.E. 76 at 14.[15]

The Declaratory Judgment Act provides that in "In a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (emphasis added). However, Article III § 2 of the United States Constitution prohibits the Court from rendering advisory opinions. U.S. Const. art. III, § 2, cl. 1; *United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961); *Dixie Elec. Co-op. v. Citizens of State of Ala.*, 789 F.2d 852, 857 (11th Cir. 1986); ("Federal courts may not render advisory opinions on abstract or hypothetical propositions of law."). As the United States Supreme Court explained:

> "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree … Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy any reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

---

[15] The insurance policy's coverage period ended on May 15, 2017, D.E. 75-1 at 4, which would put the damage to the second chiller on June 14, 2017, D.E. 75-1 at 4, outside the coverage period. However, without any evidentiary support, Menada disputes the term of the policy, stating that "[o]n May 9, 2017, Hartford notified Menada that the Policy would not be renewed, and that it was extending the current coverage with no change in terms or conditions until June 30, 2017." D.E. 81 at 14.

Here, whether the second chiller constitutes "Covered Property" that sustained a "Covered Loss" under the insurance policy is an abstract question because the pleadings do not contain a claim for an "Accident" with respect to the second chiller. To be sure, Menada's counterclaim for breach of insurance contract alleges that the second chiller was damaged by "overuse, strain and wear and tear," as a result of Hartford's alleged breach of the policy. D.E. 27 ¶¶ 48, 79. But this claim is not a claim under the policy; it is a claim for consequential damages arising from Hartford's alleged failure to pay for the replacement of the first chiller. Accordingly, summary judgment on this ground is denied.

Assuming *arguendo,* however, that Menada has suffered a "Covered Loss" due to the breakdown of the second chiller, Hartford would be entitled to summary judgment because Menada's counterclaim, to the extent it addresses the second chiller, is based solely on damage due to "overuse, strain, and wear and tear[,]" D.E. 27 ¶¶ 48, 79, which is not covered under the policy. D.E. 75-1 at 29.

Although the second chiller allegedly broke down in June, 2017, D.E. 75-14, and Menada's counterclaim was filed in August 9, 2017, D.E. 27, Menada never alleged and never sought to amend its counterclaim to reflect this alleged breakdown of the second chiller and the time for amending pleadings is long past. *See* D.E. 31. Accordingly, the breakdown of the chiller is outside the scope of the pleadings and not properly before the Court. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1251 (11th Cir. 2009) (holding that an issue was not before the court because the plaintiff failed to properly plead it in their amended complaint); *see also Valpak Direct Mktg. Sys., Inc. v. Maschino*, 349 F. App'x 368, 371 (11th Cir. 2009) ([O]n the pleadings as they existed at the time summary judgment was granted, there was no genuine issue of material fact in dispute.") (emphasis added).

F.   Counterclaim for Breach of Contract

Menada's sole remaining counterclaim for breach of insurance contract states:

"if the 'covered property' under the Policy cannot be repaired, it must be replaced. The damages to the [first chiller] constitute damages to 'covered property' … Hartford materially breached the Policy by failing to comply with the terms set forth therein … by failing to acknowledge coverage for the loss of the [first] chiller vis-à-vis replacement of the chiller in accordance with the Policy … Inherent in the concept of insurance is the fact that payment must be made timely and promptly so that Menada may mitigate its damages and be placed back into the position it was in prior to the loss … [b]y failing to tender the full amount needed to replace the damaged chiller despite knowing that Menada has sustained irreparable damages to its insured property, Hartford has breached the Policy." D.E. 27 ¶¶ 64-78 (emphasis added).

In other words, Menada argues that the covered property could not be repaired, as evidenced by the Machin replacement estimate, therefore it had to be replaced and Hartford's failure to timely compensate Menada for the full amount of the Machin replacement estimate breached the insurance policy, leading to damages. *Id.* Hartford's response to the counterclaim simply states that that the Court should "enter summary judgment on Menada's counterclaim … and dismiss the counterclaim … on the grounds that Hartford did not breach the policy." D.E. 76 at 15.

The Court has already noted the absence of any admissible evidence that the chiller could not be repaired. *See supra* pp. 9-11. In addition, the Court has already found that Hartford correctly concluded that $89,273.04 was the lowest cost to repair the chiller under the insurance policy. *See supra* pp. 11-14. Accordingly, contrary to Menada's assertions in its counterclaim, there is no genuine dispute of material fact that Hartford did not breach the policy by failing to pay the full amount of the Machin replacement estimate. Therefore, Hartford's motion for summary judgment as to the counterclaim is granted.

## V.    Conclusion

Hartford's Motion for Summary Judgment is granted as to the $89,273.04 being the lowest cost to repair under the insurance policy and as to Menada's counterclaim for breach of contract; the Motion is otherwise denied. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Court declares that Hartford's repair estimate for the first chiller of $89,273.04 is the smallest cost of repair under the parties' insurance policy and that after adding the initial inspection charges and subtracting the direct deductible, Hartford must pay Menada $79,273.04 for damage to the first chiller. It is further

ORDERED AND ADJUDGED that the case is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that the Clerk of Court SHALL administratively close this case. It is further

ORDERED AND ADJUDGED that all future hearings are CANCELLED and all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _5th__ day of April, 2018.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record